UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
DOUGLAS F. VAUGHAN,
    Debtor.

No. 7-10-10763 SA

YVETTE GONZALES, Trustee,
    Plaintiff,

v.

Adv. No. 10-1107 S

SAUL EWING, LLP,
ROBERT L. TURNER, and
JUDITH A. WAGNER, Chapter
11 Trustee of the bankruptcy estate
of the Vaughan Company, Realtors,
    Defendants.

ROBERT L. TURNER,
    Counter-Plaintiff,

v.

YVETTE GONZALES, Trustee,
    Counter-Defendant.

THIS DOCUMENT IS SEALED

ROBERT L. TURNER,
    Cross-Plaintiff,

v.

JUDITH A. WAGNER, Chapter
11 Trustee of the bankruptcy estate
of the Vaughan Company, Realtors, and
SAUL EWING, LLP,
    Cross-Defendants.

JUDITH A. WAGNER, Chapter
11 Trustee of the bankruptcy estate
of the Vaughan Company, Realtors,
    Cross-Plaintiff,

v.

ROBERT L. TURNER, and
SAUL EWING, LLP,
    Cross-Defendants.

## MEMORANDUM OPINION ON MOTIONS
## FOR SUMMARY JUDGMENT

This matter is before the Court on competing Motions for

Summary Judgment to determine ownership of funds now on deposit

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:
DOUGLAS F. VAUGHAN,
    Debtor.

No. 7-10-10763 SA

YVETTE GONZALES, Trustee,
    Plaintiff,

Adv. No. 10-1107 S

v.
SAUL EWING, LLP,
ROBERT L. TURNER, and
JUDITH A. WAGNER, Chapter
11 Trustee of the bankruptcy estate
of the Vaughan Company, Realtors,
    Defendants.

ROBERT L. TURNER,
    Counter-Plaintiff,

v.
YVETTE GONZALES, Trustee,
    Counter-Defendant.

**THIS DOCUMENT IS SEALED**

ROBERT L. TURNER,
    Cross-Plaintiff,

v.
JUDITH A. WAGNER, Chapter
11 Trustee of the bankruptcy estate
of the Vaughan Company, Realtors, and
SAUL EWING, LLP,
    Cross-Defendants.

JUDITH A. WAGNER, Chapter
11 Trustee of the bankruptcy estate
of the Vaughan Company, Realtors,
    Cross-Plaintiff,

v.
ROBERT L. TURNER, and
SAUL EWING, LLP,
    Cross-Defendants.

## MEMORANDUM OPINION ON MOTIONS
## FOR SUMMARY JUDGMENT

This matter is before the Court on competing Motions for

Summary Judgment to determine ownership of funds now on deposit

in the Court Registry. This adversary proceeding started with Trustee Gonzales ("Gonzales") filing suit against attorney Saul Ewing, LLP ("Ewing") and Robert L. Turner ("Turner") for a turnover of funds on deposit in Saul Ewing, LLP's attorney trust account held on behalf of Douglas Vaughan (the Debtor in this bankruptcy). The suit named Turner as the alleged source of the funds. Trustee Wagner ("Wagner"), Chapter 11 trustee of "The Vaughan Company, Realtors" case, also claiming the funds, sought to intervene, but was then named as a defendant in Trustee Gonzales' First Amended Complaint[1] ("Complaint") (doc 4). Ewing participated by answering the complaint and cross-claims filed against it, and then was allowed to interplead the $162,680.70 held in trust. It was then dismissed as to claims against that amount by all other parties. (Doc 27; Receipt of Registry Funds 9/28/10). Therefore, the Court will drop all further references to Ewing and its pleadings.

The active pleadings are therefore: Gonzales First Amended Complaint (doc 4)[2], which was answered by Wagner (doc 11) and

---

[1]The Court has subject matter and personal jurisdiction pursuant to 28 U.S.C. §§1334 and 157(b); this is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (E); and these are findings of fact and conclusions of law as may be required by Rule 7052 F.R.B.P.

[2]The Complaint seeks turnover of the trust funds held by Ewing, claiming that they are property of the Vaughan Chapter 7 estate. It names Wagner and Turner because they both assert claims to the funds. It also seeks a declaration that neither
(continued...)

Page -2-

Turner (doc 19); Wagner's Cross-Claim against Turner[3] (doc 11) and Turner's answer (doc 19); Turner's Amended Cross-Claim against Wagner and Cross-[sic; should be Counter] Claim against

---

[2](...continued)
Wagner or Turner have any claims to the funds.

[3]Wagner's Cross-claim against Turner alleges that he received a preferential transfer from VCR and seeks to avoid it and recover it for the VCR estate.

Case 10-01107-s*SEALED*   Doc 85 *SEALED*   Filed 03/28/12   Entered 03/28/12 14:58:31
Page 3 of 59

Case 10-01107-j   Doc 139   Filed 11/15/12   Entered 11/15/12 10:44:09 Page 4 of 60

Gonzales[4] (doc 19) and Wagner's answer (doc 30). The Counter-Claim against Gonzales remains unanswered.

Before the final pretrial conference Turner filed a Motion for Summary Judgment against Gonzales and Wagner (doc 41). At the pretrial conference the parties all agreed that this matter could be disposed of through motions for summary judgment. This matter is before the Court on 1) Turner's Motion for Summary



Count 2 adds little new material, but several legal conclusions: e.g., ownership of the funds in Ewing's trust account were never transferred to Mr. Vaughan; Wagner and Gonzales are not entitled to the unearned attorney fees; and Mr. Turner is entitled to a return of all unearned fees.

Neither of the Counts suggest in legal terms what the actual causes of action would be. What they are attempting to do, however, is to impose a constructive trust on property that would otherwise be property of either the Vaughan or VCR estate.

Page -4-

Judgment[5] (doc 41) and the response by Wagner (doc 45) and
Turner's reply (doc 54, errata doc 56) and the response by
Gonzales (doc 47) and Turner's reply (doc 58); 2) Gonzales'
Motion for Summary Judgment[6] (doc 47) and the response by Turner
(doc 58) and the response by Wagner (doc 61); Gonzales did not
reply to either response; and 3) Wagner's Motion for Summary
Judgment against Turner[7] (doc 67, with brief doc 65 and



⁶Gonzales has two theories for her summary judgment motion
against Turner: 1) Since Turner is, in reality, asserting a
constructive trust that Court should review the case and
determine that a constructive trust is improper in "Ponzi scheme"
cases because all creditors are similarly situated; and 2) under
the dominion and control test applied by the Tenth Circuit, the
funds in the trust account are estate property.  She also has two
theories for her summary judgment motion against Wagner: 1)
Wagner lacks standing to pursue a preference action against
Turner in an adversary that relates to the Vaughan personal
bankruptcy; and 2) the funds in the Ewing trust are not property
of the VCR estate.

⁷Wagner's Motion for Summary Judgment argues two points: 1)
the undisputed facts in the record establish a prima facie case
against Turner for a recovery and avoidance of a preferential
transfer, and 2) the ten affirmative defenses asserted by Turner
are meritless.

Page −5−

supplement to brief doc 69), Turner's response (doc 71) and

Wagner's Reply (doc 73).

## SUMMARY JUDGMENT

In adversary proceedings Summary Judgment is governed by

Fed.R.Bankr.P. 7056, which incorporates Fed.R.Civ.P. 56, which in

turn provides, in relevant part:

> Rule 56. Summary Judgment
> (a) Motion for Summary Judgment or Partial Summary
> Judgment. A party may move for summary judgment,
> identifying each claim or defense—or the part of each
> claim or defense—on which summary judgment is sought.
> The court shall grant summary judgment if the movant
> shows that there is no genuine dispute as to any
> material fact and the movant is entitled to judgment as
> a matter of law. The court should state on the record
> the reasons for granting or denying the motion.
> (b) ...
> (c) Procedures.
> (1) Supporting Factual Positions. A party asserting
> that a fact cannot be or is genuinely disputed must
> support the assertion by:
>> (A) citing to particular parts of materials in the
>> record, including depositions, documents,
>> electronically stored information, affidavits or
>> declarations, stipulations (including those made
>> for purposes of the motion only), admissions,
>> interrogatory answers, or other materials; or
>> (B) showing that the materials cited do not
>> establish the absence or presence of a genuine
>> dispute, or that an adverse party cannot produce
>> admissible evidence to support the fact.
> (2) Objection That a Fact Is Not Supported by
> Admissible Evidence. A party may object that the
> material cited to support or dispute a fact cannot be
> presented in a form that would be admissible in
> evidence.
> (3) Materials Not Cited. The court need consider only
> the cited materials, but it may consider other
> materials in the record.
> (4) Affidavits or Declarations. An affidavit or
> declaration used to support or oppose a motion must be

Case 10-01107-s*SEALED*   Doc 85 *SEALED*   Filed 03/28/12   Entered 03/28/12 14:58:31
Page 6 of 59

made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

(d) ...

(e) **Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or

(4) issue any other appropriate order.

(f) ...

(g) **Failing to Grant All the Requested Relief.** If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact--including an item of damages or other relief--that is not genuinely in dispute and treating the fact as established in the case.

Fed.R.Civ.P. 56. Additionally, New Mexico Local Rule 7056-1

regulates the required procedure:

SUMMARY JUDGMENT

(a) **Memoranda.** The movant shall file with the motion a memorandum containing a concise statement in support of the motion with a list of authorities. A motion for summary judgment filed without a memorandum may be summarily denied. A party opposing the motion shall, within 21 days after service of the motion, file a memorandum containing a concise statement in opposition to the motion with a list of authorities. If no response is filed, the court may grant the motion. The movant may, within 14 days after the service of a response, file a reply memorandum.

(b) **Undisputed Facts.** The memorandum in support of the motion shall set out as its opening a concise statement of all of the material facts as to which movant contends no genuine issue exists. The facts

Case 10-01107-s*SEALED*   Doc 85 *SEALED*   Filed 03/28/12   Entered 03/28/12 14:58:31
Page 7 of 59

Case 10-01107-j    Doc 139    Filed 11/15/12    Entered 11/15/12 10:44:09   Page 8 of 60

shall be numbered and shall refer with particularity to those portions of the record upon which movant relies.

(c) **Disputed Facts.** A memorandum in opposition to the motion shall contain a concise statement of the material facts as to which the party contends a genuine issue does exist. Each fact in dispute shall be numbered, shall refer with particularity to those portions of the record upon which the opposing party relies, and shall state the number of the movant's fact that is disputed. All material facts set forth in movant's statement that are properly supported shall be deemed admitted unless specifically controverted.

NM LBR 7056-1.

The version of Rule 56 quoted above became effective on December 1, 2010. See Fed. R. Civ. P. 56 (2010 Advisory Committee comments).

> In some respects, the 2010 amendment to Rule 56 works a sea change in summary judgment procedure and introduces flexibility (and consequent uncertainty) in place of the bright-line rules that obtained previously. Former Rule 56(e) contained an unequivocal direction that documents presented in connection with a summary judgment motion must be authenticated:
> > If a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit.
>
> Fed. R. Civ. P. 56(e)(1) (2009 version). Relying on this language, the United States Court of Appeals for the Sixth Circuit routinely held that unauthenticated documents could not be used to support a motion for summary judgment. See, e.g., Moore v. Holbrook, 2 F.3d 697, 698-99 (6th Cir. 1993). As recently as 2009, the Court of Appeals stated that unauthenticated documents do not meet the requirements of Rule 56(e) and must be disregarded. Alexander v. CareSource, 576 F.3d 551, 558-59 (6th Cir. 2009).

Foreword Magazine, Inc. v. Overdrive, Inc., 2011 WL 5169384 at *1-2 (W.D. Mich. 2011). Virtually all other courts agreed. See, e.g.,

> Although affidavits are not strictly required by Rule
> 56 or case law, in practice they are usually necessary
> to obtain summary judgment.... [I]t makes sense to
> distinguish between affidavits that primarily give
> testimony and affidavits that are used primarily to
> introduce documents so that the court may consider the
> documents in determining whether material factual
> matter is genuinely in dispute. A party seeking to
> rely on material other than affidavits to obtain
> summary judgment may nonetheless need to use an
> affidavit to place these materials before the court and
> into the official record. ...
> In order for documents not yet part of the court record
> to be considered by a court in support of or in
> opposition to a summary judgment motion they must meet
> a two-prong test: (1) the document must be attached to
> and authenticated by an affidavit which conforms to
> Rule 56(e); and (2) the affiant must be a competent
> witness through whom the document can be received into
> evidence. ...
>         Documentary evidence for which a proper foundation
> has not been laid cannot support a summary judgment
> motion, even if the documents in question are highly
> probative of a central and essential issue in the case.

Harris v. Beneficial Oklahoma, Inc. (In re Harris), 209 B.R. 990,

995-96 (10th Cir. BAP 1997)(footnotes omitted.) See also United

States v. Dibble, 429 F.2d 598, 602 (9th Cir. 1970)

(Unauthenticated summary judgment exhibits are inadmissible

hearsay.); White v. Wells Fargo Guard Services, 908 F.Supp. 1570,

1579 (M.D. Ala. 1995)(Court may not consider documents not sworn

or certified as required by Fed.R.Civ.P. 56.); Canada v. Blain's

Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987):

>         It is well settled that unauthenticated documents
> cannot be considered on a motion for summary judgment.
> In order to be considered by the court, "documents must
> be authenticated by and attached to an affidavit that
> meets the requirements of [Fed.R.Civ.P.] 56(e) and the
> affiant must be a person through whom the exhibits
> could be admitted into evidence." 10A C. Wright, A.

Page -9-

Miller & M. Kane, Federal Practice and Procedure § 2722 at 58-60 (2d ed. 1983) (footnotes omitted). This court has consistently held that documents which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment. Hamilton v. Keystone Tankship Corp., 539 F.2d 684, 686 (9th Cir. 1976); United States v. Dibble, 429 F.2d 598, 601-02 (9th Cir. 1970).

See also Mooney v. Monumental Life Ins. Co., 123 F.Supp.2d 1008, 1010 (E.D. La. 2000)(Checks submitted as exhibits were not properly before the court because they were not attached to and authenticated by an affidavit conforming to Rule 56(e)); Investors Credit Corp. v. Batie (In re Batie), 995 F.2d 85, 89 (6th Cir. 1993)(Upon a party's objection, documents filed in support of or in opposition to a motion may not be considered by the court unless they have entered "the record as attachments to an appropriate affidavit" and "would be admissible in evidence.")

These authorities must be read carefully, however, in light of the 2010 amendments to Rule 56, which eliminated the unequivocal requirement that documents submitted in support of a summary judgment motion must be authenticated. Rather, the amended Rule allows a party making or opposing a summary judgment motion to cite to materials in the record including, among other things, "depositions, documents, electronically stored information, affidavits or declarations" and the like. Fed. R. Civ. P. 56(c)(1)(A). If the opposing party believes that such materials "cannot be presented in a form that would be admissible in evidence," that party must file an objection. Fed. R. Civ. P. 56(c)(2). (As a result of the 2010 amendments, motions to strike are no longer appropriate. See Reed v. Austal U.S.A., L.L.C., No 08-155, 2011 WL 4435562 at *5 n. 6 (S.D. Ala. Sept. 23, 2011). Such motions should be construed as objections under Rule 56(c)(2). Id.) Significantly, the objection contemplated by the amended Rule is not that the material "has not" been submitted in admissible form, but that it "cannot" be.

Page -10-

The comments to the 2010 amendments make it clear that the drafters intended to make summary judgment practice conform to procedure at trial. "The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike." Fed. R. Civ. P. 56 (2010 Advisory Committee comments). The revised Rule therefore clearly contemplates that the proponent of evidence will have the ability to address the opponent's objections, and the Rule allows the court to give the proponent "an opportunity to properly support or address the fact," if the court finds the objection meritorious. Fed. R. Civ. P. 56(e)(1). Thus, the amendment replaces a clear, bright-line rule ("all documents must be authenticated") with a multi-step process by which a proponent may submit evidence, subject to objection by the opponent and an opportunity for the proponent to either authenticate the document or propose a method to doing so at trial.

Foreword Magazine, 2011 WL 5169384 at *2.

The new subdivision (c)(3) "reflects judicial opinions and local rules provisions stating that the court may decide a motion for summary judgment without undertaking an independent search of the record." Fed. R. Civ. P. 56 (2010 Advisory Committee comments).

When filing or responding to a motion for summary judgment the parties must adhere to the federal and local rules to promote efficiency both for the Court and the parties. See Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 150-151 (D.C. Cir. 1996):

> [The District Court's local rule on summary judgment procedures] assists the district court to maintain docket control and to decide motions for

Case 10-01107-s*SEALED* Doc 85 *SEALED* Filed 03/28/12 Entered 03/28/12 14:58:31 Page 11 of 59

Case 10-01107-j Doc 139 Filed 11/15/12 Entered 11/15/12 10:44:09 Page 12 of 60

summary judgment efficiently and effectively. As this court explained in Gardels v. Central Intelligence Agency, 637 F.2d 770 (D.C. Cir. 1980), with regard to the predecessor local rule identical to Local Rule 108(h):

> Requiring strict compliance with the local rule is justified both by the nature of summary judgment and by the rule's purposes. The moving party's statement specifies the material facts and directs the district judge and the opponent of summary judgment to the parts of the record which the movant believes support his statement. The opponent then has the opportunity to respond by filing a counterstatement and affidavits showing genuine factual issues. The procedure contemplated by the rule thus isolates the facts that the parties assert are material, distinguishes disputed from undisputed facts, and identifies the pertinent parts of the record.

The D.C. Circuit had previously pointed out that --

> a district court judge should not be obliged to sift through hundreds of pages of depositions, affidavits, and interrogatories in order to make his own analysis and determination of what may, or may not, be a genuine issue of material disputed fact. In this respect, a district court may legitimately look to and rely upon counsel to identify the pertinent parts of the record, to isolate the facts that are deemed to be material, and to distinguish those facts which are disputed from those that are undisputed.
>
> When counsel fails to discharge this vital function, he may not be heard to complain that the district court has abused its discretion by failing to compensate for counsel's inadequate effort.

Twist v. Meese, 854 F.2d 1421, 1425 (D.C. Cir. 1988), cert. denied, 490 U.S. 1066 (1989).

The United States District Court for the District of New Mexico recently presented a complete overview of the legal standards for deciding Motions for Summary Judgment in the Tenth Circuit:

Page -12-

Rule 56(c) states that summary judgment "should be
rendered if the pleadings, the discovery and disclosure
materials on file, and any affidavits show that there
is no genuine issue as to any material fact and that
the movant is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c)(2). The movant bears the initial
burden of "show[ing] that there is an absence of
evidence to support the nonmoving party's case."
Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d
887, 891 (10th Cir. 1991)(internal quotation marks
omitted). See Celotex Corp. v. Catrett, 477 U.S. 317,
323 (1986)("Of course, a party seeking summary judgment
always bears the initial responsibility of informing
the district court of the basis for its motion, and
identifying those portions of the [record], together
with the affidavits, if any, which it believes
demonstrate the absence of a genuine issue of material
fact .")(internal quotation marks omitted). Once the
movant meets this burden, rule 56(e) requires the
non-moving party to designate specific facts showing
that there is a genuine issue for trial. See Celotex
Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 256 (1986); Vitkus v.
Beatrice Co., 11 F.3d 1535, 1539 (10th Cir. 1993)
("However, the nonmoving party may not rest on its
pleadings but must set forth specific facts showing
that there is a genuine issue for trial as to those
dispositive matters for which it carries the burden of
proof.")(internal quotation marks omitted).

The party opposing a motion for summary judgment
must "set forth specific facts showing that there is a
genuine issue for trial as to those dispositive matters
for which it carries the burden of proof." Applied
Genetics Int'l, Inc. v. First Affiliated Secs., Inc.,
912 F.2d 1238, 1241 (10th Cir. 1990). Rule 56 provides
that "an opposing party may not rely merely on
allegations or denials in its own pleading; rather, its
response must—by affidavits or as otherwise provided in
this rule—set out specific facts showing a genuine
issue for trial." Fed.R.Civ.P. 56(e)(2). It is not
enough for the party opposing a properly supported
motion for summary judgment to "rest on mere
allegations or denials of his [or her] pleadings." See
Anderson v. Liberty Lobby, Inc., 477 U.S. at 256. See
Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231
(10th Cir. 1990); Otteson v. United States, 622 F.2d
516, 519 (10th Cir. 1980)( "However, 'once a properly
supported summary judgment motion is made, the opposing

Page -13-

party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)). Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Fed.R.Civ.P. 56(e) and Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006)). "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'" Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To survive summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539. Rather, there must be sufficient evidence on which the fact-finder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improv. Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable ... or is not significantly probative, ... summary judgment may be granted ." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (internal citations omitted). Where a rational trier of fact, considering the record as a whole, could not find for the non-moving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind three principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. Second, the court must resolve all reasonable inferences and doubts in favor of the non-moving party and construe all evidence in the light most favorable

Page -14-

to the non-moving party. See Hunt v. Cromartie, 526
U.S. 541, 550-55 (1999). Third, the court cannot
decide any issues of credibility. See Anderson v.
Liberty Lobby, Inc., 477 U.S. at 255.

Bhandari v. VHA Southwest Community Health Corp., 2011 WL 1336525

at *10-11 (D. N.M. 2011) (citing former Rule 56).

The 2010 amendments, except for the obvious changes

established by the new materials, were not intended to change

summary judgment standards or practice.[8]  But given the more

---

[8]See Letter from Committee on Rules of Practice and
Procedure of the Judicial Conference of the United States to the
Hon. John G. Roberts, Chief Justice of the United States,
December 16, 2009 (available at http://www.uscourts.gov/
RulesAndPolicies/FederalRulemaking/PendingRules/proposedSupCt1210
.aspx , follow link "Summary of Proposed Amendments")(last
visited March 21, 2012).
    The proposed amendments to Rule 56 are intended to
improve the procedures for presenting and deciding
summary judgment motions, to make the procedures more
consistent across the districts, and to close the gap
that has developed between the rule text and actual
practice.  The amendments are not intended to change
the summary judgment standard or burdens.  The
amendments include (1) requiring that a party asserting
a fact that cannot be genuinely disputed provide a
"pinpoint citation" to the record supporting its fact
position; (2) recognizing that a party may submit an
unsworn written declaration, certificate, verification,
or statement under penalty of perjury in accordance
with 28 U.S.C. § 1746 as a substitute for an affidavit
to support or oppose a summary judgment motion; (3)
setting out the court's options when an assertion of
fact has not been properly supported by the party or
responded to by the other party, including considering
the fact undisputed for purposes of the motion,
granting summary judgment if supported by the motion
and supporting materials, or affording the party an
opportunity to amend the motion; (4) setting a time
deadline, subject to variation by local rule or court
order in a case, for the filing of a summary judgment
                                            (continued...)

"flexible" approach now allowed the movant in submitting evidence to support a motion for summary judgment, Foreward Magazine, 2011 WL 5169384 at *1, it becomes even more important for movant to comply with NM LBR 7056-1(b) and (c) in pinpointing the portions of the record that support the alleged undisputed facts or to admit candidly that movant hopes to prove the fact at trial if need be.

## UNDISPUTED FACTS

There are two sources for facts in this adversary. First, the matters admitted in the answers to the Complaint, cross-claims and counter-claims; and second, the undisputed facts established by the motions for summary judgment. As noted above, claims and admissions by Ewing are not considered.

### A. ADMISSIONS

The following facts were admitted:

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §1334(a), 28 U.S.C. §157(b), and the

---

[8](...continued)
motion; (5) explicitly recognizing that "partial summary judgment" may be entered; and (6) clarifying the procedure for challenging the admissibility of summary judgment evidence.
The Committee's assurances that the new version of the rule is not intended to change the respective burdens of the summary judgment process is not inconsistent with the observation of the District Court in Foreward Magazine that the revisions have effected a sea change in summary judgment procedure. 2011 WL 5169384 at *1-2. It remains to be seen whether the "new Coke" version of the rule serves as well as the earlier version of the rule with its bright-line rules for submitting evidence. Id.

Page -16-

administrative order entered March 19, 1992, in the United States District Court for this district referring cases to this Court, in that this action is a core proceeding for turnover pursuant to 11 U.S.C. §542. Venue is proper.

2. Douglas F. Vaughan filed a voluntary petition under chapter 11 of the Bankruptcy Code on February 22, 2010, and the case was converted to a chapter 7 proceeding on May 20, 2010.

3. Plaintiff is the duly appointed Chapter 7 trustee of the Douglas F. Vaughan chapter 7 estate.

4. On February 22, 2010 (the "VCR Petition Date"), the Vaughan Company, Realtors ("VCR") filed a voluntary petition under chapter 11 of the Bankruptcy Code.

5. Wagner is the duly appointed Chapter 11 Trustee of the VCR bankruptcy estate.

6. Turner is an individual residing and doing business in Bernalillo County, New Mexico.

7. Turner admits he wrote a check to VCR that stated "legal fees" and admits there is a proof of claim filed on his behalf for the $300,000.

8. Wagner asserted the following affirmative defenses: failure to state a claim, lack of standing, plaintiff is not the real party in interest.

9. Turner asserted the following affirmative defenses: failure to state a claim, the funds are not property of the estate, the

Page -17-

estate lacks title, █████████████████████████████

██████████████████████████████████████████████████
██████████████████████████████████████████████████

In the discussion that follows, for the proposed facts listed in the three summary judgment motions, each proposed fact is listed in quotation marks. If there are no comments to the fact, this means that the other parties did not dispute it.

B. TURNER'S PROPOSED UNDISPUTED MATERIAL FACTS (doc 41)

Turner listed twelve proposed undisputed material facts. Gonzales' and Wagner's responses differ, so the facts will be analyzed as to each.

1. "Douglas Vaughan ran a Ponzi scheme involving 'investors' all over the United States." Gonzales agreed that this was undisputed. Wagner objected to this fact as irrelevant and also as lacking a citation to the record as required by the federal and local rules. The Court agrees that without a record citation this fact has not technically been established[9]. However, the

---

[9]In Turner's reply (doc 54) to Wagner's response to his Motion for Summary Judgment (doc 45) he states "Wagner disputes every material fact listed by Turner in the Motion for Summary Judgment. Wagner disputes the vast majority of the facts based on illusory technicalities, not because a genuine issue exists as to the facts' veracity. ... In order to overcome the technicalities cited by Wagner, at a level which Turner disputes is required, the evidence for each undisputed material fact will be discussed individually as follows." (Doc 54, p. 2.) Turner may dispute what is required, but in fact, Fed.R.Civ.P. 56, NM LBR 7056-1 and case law are clear. A summary judgment movant must identify the factual record. See NM LBR 7056-1(b):
(continued...)

Case 10-01107-j   Doc 139   Filed 11/15/12   Entered 11/15/12 10:44:09 Page 19 of 60

The [proposed undisputed] facts shall be numbered and
shall refer with particularity to those portions of the
record upon which movant relies.
(Emphasis added.)   Hundreds of cases agree.   See, e.g., Garland
v. Advanced Medical Fund, L.P. II, 86 F.Supp.2d 1195, 1198-99
(N.D. Ga. 2000):

> Because they affect the consideration and
> description of the relevant facts in this case, the
> court must initially address several issues concerning
> the procedural requirements that accompany the filing
> of a motion for summary judgment.  This court's local
> rules require that the movant "attach to the motion a
> separate and concise statement of the material facts to
> which the movant contends there is no genuine issue to
> be tried."  LR 56.1B(1), N.D. Ga.  Moreover, "[a]ll
> documents and other record materials relied upon by a
> party moving for or opposing a motion for summary
> judgment shall be clearly identified for the court."
> LR 56.1B(3), N.D. Ga.  Apparently attempting to comply
> with these rules, all parties in this case have filed
> separate factual statements with their motions for
> summary judgment.  Only the Garlands and Defendants
> Anderson and Advance Textile, however, support their
> factual statements with citations to evidence in the
> record.  The other Defendants have failed to do so, and
> as a result, their motions are not in compliance with
> the rules of this court.  Accordingly, Plaintiffs urge
> the court to deny these motions as not properly
> supported.  Defendants argue, however, that
> Fed.R.Civ.P. 56 allows a party to move for summary
> judgment with or without supporting affidavits, and
> therefore the motions are proper.  Additionally,
> Defendants note that reference to deposition testimony
> and exhibits is made in the supporting memorandum.
>
> The court finds Defendants' arguments to be
> unavailing.  The purpose of the requirements that
> movants file separate statements of fact and that
> evidence relied upon be clearly identified is to allow
> the court to compare the factual statement with the
> evidence and determine whether or not particular
> inferences can be drawn by the factfinder.  In other
> words, these requirements facilitate the court in
> evaluating whether or not there exists a genuine issue
> of material fact.  The court should not be made to
> (continued...)

Page -19-

Court can and will take judicial notice of the files in the
Vaughan bankruptcy and VCR bankruptcy, and the evidence presented
on the record in those cases, and take notice of its prior
Memorandum Opinion and find that the fact is undisputed.

2.   "Mr. Turner and Mr. Vaughan were long-standing friends."
Wagner disputed this fact but also objected as lacking a citation
to the record.  The Court agrees that without a record citation
this fact has not been established.  Therefore, Turner fact 2 is
disputed as to Wagner.  Gonzales failed to respond to Turner fact
2 and would therefore be deemed to admit it _if_ it were properly
supported.  _See_ NM LBR 7056-1(c).  However, as Wagner pointed

---

[9](...continued)
guess the sources of a movant's version of the relevant
facts.  Indeed, the movant has an "initial
responsibility of informing the district court of the
basis for its motion, and identifying those portions of
'the pleadings, depositions, answers to
interrogatories, and admissions on file, together with
affidavits, if any,' which it believes demonstrates the
absence of a genuine issue of material fact." _Celotex
Corp. v. Catrett_, 477 U.S. 317, 323, 106 S.Ct. 2548, 91
L.Ed.2d 265 (1986).  _See also_ _Clark v. Coats & Clark,
Inc._, 929 F.2d 604, 606-09 (11th Cir. 1991) (noting
that _Celotex_ did not overrule prior precedent that
movant had initial burden of showing absence of genuine
issue of material fact and declining to address for
first time on appeal whether that burden had been met
because "[t]o do so would require us to discharge the
movant's Rule 56 responsibility of searching the record
and identifying material in support of its motion").
Moreover, citations scattered throughout a legal brief
do not comply with the requirement that sources be
"clearly identified."
(The _Garland_ Court summarily denied the nonconforming motions.
86 F.Supp.2d at 1199).

out, the fact is not supported by a record reference so Gonzales is not deemed to accept fact 2. In summary, fact 2 is disputed.

3. "During the period of May 2009 through February, 2010 Mr. Vaughan borrowed funds from Mr. Turner on a monthly basis in amounts totaling $3,650,000 from Turner in a series of eleven transactions. The amount does not include two checks that were apparently intended to be for legal fees. See Proofs of Claim, Amended 314 (The Vaughan Company, Realtors) and Amended 258 (Douglas F. Vaughan)." Wagner disputes fact 3. She argues that the proofs of claim are inadmissable because they were signed by Turner's attorney, not Turner, and the checks attached to the claims are not properly authenticated because they are not certified copies nor have they been authenticated by any other means. Turner, citing Fed.R.Civ.P. 56(c)(2), argues in his reply brief that his undisputed facts are supported by appropriate evidence. (Doc 54, pp. 5-6). The Court agrees that the checks attached to the claims would be admissible under a hearsay objection as business records. The proof of claim can be considered a summary of the checks. Gonzales failed to respond to Turner fact 3. In summary, the Court finds Turner fact 3 is undisputed.

4. "Mr. Turner paid $200,000 to Saul Ewing, LLC. See Exhibit B to Answer to Amended Complaint and Counterclaims." Wagner objects to this fact because the Exhibit B referred to is a copy

Page -21-

of a check that has not been authenticated. Gonzales failed to respond to Turner fact 4 so is deemed to admit it. The Court finds it admissible for the reasons stated in Turner fact 3. In summary, Turner fact 4 is undisputed.

5. "Saul Ewing deposited the $200,000 check into its trust account." Wagner objects because there is no citation to the record. The Court agrees. Furthermore, Turner has not laid a foundation for knowing what account the check was deposited in and the only way he could know this is if someone told him, so it is hearsay. Gonzales did not respond to Turner fact 5, but the Court finds it inadmissable. In summary, Turner fact 5 is disputed.

6. "Saul Ewing earned over thirty thousand dollars in attorney's fees during its representation of Mr. Vaughan, which it removed from the $200,000 it held in trust." Wagner objects because there is no citation to the record. The Court agrees. Furthermore, Turner has not laid a foundation for knowing what Saul Ewing earned and the only way he could know this is if someone told him, so it is hearsay. Gonzales did not respond to Turner fact 6, but the Court finds it inadmissable. In summary, Turner fact 6 is disputed.

7. "Saul Ewing has placed the remaining $162,699.38 into the Court Registry with permission of the Court and makes no claim to the remaining funds." Wagner objects because there is no

Page -22-

citation to the record. The Court agrees that it has no duty to
search the record for this information, but it appears on the
docket so the Court will find it undisputed. Gonzales agreed
with fact 7. In summary, the Court finds this fact undisputed.

8.[10] ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████ 6) it improperly relies on

pleadings drafted by Turner's attorneys, and 7) it improperly
relies on Turner's own inadmissible affidavit. Gonzales objects
to Turner fact 8 because the Swanda affidavit is dated several

_____

[10]Turner facts 8 through 11 will be discussed together.

months after the subject checks were written, and because it directly conflicts with Turner's own affidavit (main case, doc 136-1) in which Turner stated he paid the attorney retainer of $200,000 because Douglas F. Vaughan was a friend.

Turner's facts 9 through 11 pick out certain statements in the Swanda affidavit as undisputed facts. Wagner and Gonzales raise the same objections to those facts.

9.



10.

Id. at ¶ 8."

11.

Rule 702 governs the admissibility of expert testimony. It allows a qualified individual who possesses "scientific, technical, or other specialized knowledge" to testify as an expert if "it will assist the trier of fact to understand the evidence or to determine a fact in issue." FRE 702. A witness may be qualified by "knowledge, skill, experience, training, or education." Id. The expert may offer his or her opinion on matters outside the scope of his personal knowledge only if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case ." FRE 702. Put another way, "Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized

Page -24-

knowledge; and (3) the expert's testimony must assist the trier of fact." <u>Pineda v. Ford Motor Co.</u>, 520 F.3d 237, 244 (3d Cir. 2008).

The "proponent of expert testimony must establish his expert is qualified and his testimony is admissible by a preponderance of the evidence." <u>Poust v. Huntleigh Healthcare</u>, 998 F.Supp. 478, 490 (D. N.J. 1998). The Court has an obligation to act as a "gatekeeper" to ensure the "reliability and relevancy of expert testimony" presented to the finder of fact. <u>Kumho Tire Co. v. Carmichael</u>, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999); <u>See also</u> <u>Daubert v. Merrell Dow Pharms.</u>, 509 U.S. 579, 592-593, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

To aid in this inquiry, <u>Daubert</u> and <u>United States v. Downing</u>, 753 F.2d 1224 (3d Cir. 1985), cite several factors for the Court to consider in examining the expert's methodology: "(1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualification of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put." <u>In re Paoli R.R. Yard PCB Litigation</u>, 35 F.3d 717, 742 (3d Cir. 1994) citing <u>Daubert</u> and <u>United States v. Downing</u>, 753 F.2d 1224 (3d Cir. 1985).

<u>Fancaster, Inc. v. Comcast Corp.</u>, __ F.Supp.2d ___, 2011 WL 6426292 at *13-14 (D. N.J. 2011).



Page -25-

> Faced with a proffer of expert scientific
> testimony, then, the trial judge must determine at the
> outset, pursuant to Rule 104(a), whether the expert is
> proposing to testify to (1) scientific knowledge that
> (2) will assist the trier of fact to understand or
> determine a fact in issue. This entails a preliminary
> assessment of whether the reasoning or methodology
> underlying the testimony is scientifically valid and of
> whether that reasoning or methodology properly can be
> applied to the facts in issue.

(Footnotes omitted.) Furthermore, the affidavit answers none of the questions the Supreme Court found relevant to admission of expert testimony: 1) "Ordinarily, a key question to be answered in determining whether a theory or technique is scientific knowledge that will assist the trier of fact will be whether it can be (and has been) tested." Id. at 593; 2) "Another pertinent consideration is whether the theory or technique has been subjected to peer review and publication." Id.; 3) "[T]he court ordinarily should consider the known or potential rate of error." Id. at 594; and 4) " Finally, 'general acceptance' can yet have a bearing on the inquiry. A 'reliability assessment does not require, although it does permit, explicit identification of a relevant scientific community and an express determination of a particular degree of acceptance within that community.'" Id. (Citation omitted.) Normally these questions are answered at trial when attempting to qualify an expert witness, and during any voir dire or cross-examination. This, however, is a motion for summary judgment and the burden is on the movant to establish that there is admissible evidence before

Page -26-

the Court.  <u>Farris v. Intel Corp.</u>, 493 F.Supp.2d 1174, 1181 (D.
N.M. 2007).  The Court must do more than simply take the
"expert's word for it."  <u>Id.</u> at 1182 (Citation omitted.)  <u>See</u>
<u>also Zamecnik v. Indian Prairie School District #204</u>, 636 F.3d
874, 881 (7th Cir. 2011)(An expert must explain how he used his
expertise to generate the conclusions.  "Mere conclusions"
without describing the inferential process are useless to the
court.)



Page -27-



Page -28-

Case 10-01107-s*SEALED*   Doc 85 *SEALED*   Filed 03/28/12   Entered 03/28/12 14:58:31
Page 28 of 59

Therefore, she argues that ████████████████████████████████
████████████████████████ She also objects because the April
3, 2010 affidavit does not attach copies of documents to which it
refers. The Court agrees with Wagner and finds that Turner fact
12 is subject to a genuine dispute.

In his reply brief, Turner attempts to supply citations to
the record in support of his purportedly undisputed facts. While
minor correction or supplementation in a reply brief for
incorrect or missing support in the initial brief is certainly
permissible, in this case the wholesale attempt to do in the
reply brief what was the required showing in the initial brief is
perhaps too little and certainly too late. The purpose of a
reply brief is to present legal arguments against matters raised
in the response. See Springs Indus., Inc. v. American Motorists
Ins. Co., 137 F.R.D. 238, 239-40 (N.D. Tex. 1991):

> It cannot seriously be disputed that a movant is
> obligated to file with a motion the evidentiary
> materials necessary to justify the relief it seeks.
> The office of the reply brief permitted by Rule 5.1(f)
> is to rebut the nonmovant's response, thereby
> persuading the court that the movant is entitled to the
> relief requested by the motion. The document is to
> contain argument, not new supporting materials.

It is not a place to introduce new factual assertions that
properly belong in the opening brief. Furthermore, allowing new
factual assertions in a reply deprives the respondent of an
opportunity to controvert the new factual assertions. Id. at
239. When the record citations were not in the motion, neither

Page -29-

Wagner nor Gonzales had a duty to search through the record for instances of the alleged facts and then attempt to controvert them because facts without citations to the record need no response. See Green v. New Mexico, 420 F.3d 1189, 1196 (10th Cir. 2005)(If a reply contains new information (defined as either new evidence or new legal arguments), the Court needs to give the nonmoving party an opportunity to respond only if the Court will rely on that new material. It is not an abuse of discretion to ignore the new material and preclude a surreply.) See also Adams v. American Guarantee and Liability Ins. Co., 233 F.3d 1242, 1248 (10th Cir. 2000)(An argument raised for the first time in reply is "not sufficient.")

## C.   GONZALES' PROPOSED UNDISPUTED MATERIAL FACTS (doc 47).

Most of the Gonzales' proposed facts suffer the same problem as Turner's. Facts 1 through 5, 7, 9, 11 and 12 contain no citation to the record. The Court will simply ignore those.

6.   "On or about February 3, 2010, VCR wrote a check to Turner for $200,000 in partial repayment of the funds loaned on February 1, 2010 from Turner to VCR ("Vaughan Company, Realtors"). The $200,000 check was noted in VCR's books as a 'repayment of principal.' (VCR Trustee's Answer to Amended Complaint and Cross Claims, ¶ 10, docket No. 11)."

Turner responded that he had no knowledge of fact 6 and that "especially with regard to how such a check was reflected in

Case 10-01107-s*SEALED*   Doc 85 *SEALED*   Filed 03/28/12   Entered 03/28/12 14:58:31
Page 30 of 59

VCR's books." (Doc 58, p.2). This response is totally inadequate to controvert the fact. The issue is not whether Turner has this information; the issue is whether Turner has any evidence that contradicts the statement.

> [In ruling on a motion for summary judgment,] [t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial. _Anderson v. Liberty Lobby, Inc._, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); 10 Wright, Miller & Kane § 2712, at 574-78. The parties, in turn, bear a concomitant burden to identify the evidence that will facilitate this assessment. Thus, as Fed.R.Civ.Proc. 56(e) makes clear, a party opposing summary judgment may not rely on the allegations of her pleadings. Rather:
>
>> [T]he adverse party's response, by affidavits or as otherwise provided in this rule, must set forth _specific facts_ showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, _shall_ be entered against the adverse party.
>
> (Emphasis supplied). This requirement is more than a technicality; as the now familiar trilogy of 1986 cases from the Supreme Court established, if the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her. _Matsushita Elec. Indus. Co. v. Zenith Radio Corp._, 475 U.S. 574, 585-87, 106 S.Ct. 1348, 1355-56, 89 L.Ed.2d 538 (1986); _Celotex Corp. v. Catrett_, 477 U.S. 317, 322-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); _Anderson_, 477 U.S. at 249-52, 106 S.Ct. at 2511-12. The burden on the non-movant is not onerous. 10A Wright, Miller & Kane § 2727, at 148. She need not tender evidence in a form that would be admissible at trial (Of course, the evidence set forth must be of a kind admissible at trial. _E.g._, _Gustovich v. AT & T Communications, Inc._, 972 F.2d 845, 849 (7th Cir. 1992); Fed.R.Civ.P. 56(e).); she may rely on affidavits or any other materials of the kind identified in Rule 56(c). _Celotex_, 477 U.S. at 324, 106 S.Ct. at 2553. Moreover, the non-movant need not match the movant witness for

Page -31-

witness, nor persuade the court that her case is convincing, she need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact. Anderson, 477 U.S. at 248-49, 106 S.Ct. at 2510 (quoting First Nat. Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)); see also id. 477 U.S. at 255, 106 S.Ct. at 2513; Sarsha v. Sears, Roebuck & Co., 3 F.3d 1035, 1041 (7th Cir. 1993); Jackson v. Duckworth, 955 F.2d 21, 22 (7th Cir. 1992); Cameron v. Frances Slocum Bank & Trust Co., 824 F.2d 570, 575 (7th Cir. 1987).

Waldridge v. American Hoechst Corp., 24 F.3d 918, 920-21 (7th Cir. 1994)(Former Rule 56). See also Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998):

> If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant. Fed.R.Civ.P. 56(e); see Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888-89, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990); Celotex, 477 U.S. at 324, 106 S.Ct. 2548; Anderson, 477 U.S. at 248, 106 S.Ct. 2505. To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein. See Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir.), cert. denied, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). Thus, although our review is de novo, we conduct that review from the perspective of the district court at the time it made its ruling, ordinarily limiting our review to the materials adequately brought to the attention of the district court by the parties.

Wagner agrees that Gonzales fact 6 is undisputed as far as it goes, but further states that Wagner claims that that $200,000 check given to Turner represents the same funds Turner gave to

Ewing. Her theory of the case is that Ewing held traceable funds.

In summary, the Court finds Gonzales fact 6 undisputed.

8. "Turner paid the legal fees for the Vaughan Retainer, because Debtor was a friend of Turner's; (Ex. 1, Affidavit of Bob L. Turner, dated March 19, 2010)."

In summary, based on these responses and also other evidence in the record, the Court finds that Gonzales fact 8 is disputed.

10. "Ewing and Curlett never met Turner, never spoke to Turner or communicated with Turner in any manner whatsoever; (See Attached Ex. 2, Affidavit of Ewing, and the Affidavit of Bob L. Turner dated April 3, 2010 that is Ex. C to Docket No. 7 in this proceeding)."

Turner's response again denies knowledge, so he is deemed to admit that fact 10 is undisputed. Wagner agrees it is undisputed.

13. "Turner filed an Amended Proof of Claim in this bankruptcy case for money that Turner loaned to the Debtor in the amount of $5,905,000 (POC No. 258-2)."

Turner admits that fact 13 is undisputed.

Wagner agrees that proofs of claim were filed, but she further demonstrates that the details offered in support of the validity and amount of the claim show that most of the credit was extended to VCR, not Douglas Vaughan.

In summary, for what it is worth, the Court finds fact 13 undisputed.

## D. WAGNER'S PROPOSED UNDISPUTED MATERIAL FACTS (doc 65)

1. "On February 22, 2010 (the 'Petition Date'), VCR filed a voluntary petition under Chapter 11 of the Bankruptcy Code. See Wagner's Cross-Claims, ¶ 1. Turner's Answer, ¶ 1."

2. "Wagner is the duly appointed Chapter 11 Trustee of the VCR's bankruptcy estate. See Wagner's Cross-Claims, ¶ 2, Turner's Answer, ¶ 1; see also Certification of Commencement of Case and Appointment of Chapter 11 Trustee (the "Certification"), attached hereto as Exhibit 1, and incorporated herein by this reference."

3. "Turner is an individual residing and doing business in Bernalillo County, New Mexico. See Wagner's Cross-Claims, ¶ 3, Turner's Answer, ¶ 1."

4. "The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334. See Wagner's Cross-Claims, ¶ 5, Turner's Answer, ¶ 1."

5. "Venue is proper in this Court. See Wagner's Cross-Claims, ¶ 6, Turner's Answer, ¶ 1."

6.   "According to the books and records of VCR, Turner regularly began investing in VCR's promissory note program as early as 1996, periodically investing in increments ranging from $60,000 to $500,000, usually at a rate of 22%. Turner's notes generally amortized over a period of 24 months. Turner also invested $1,000,000 in September 2009; and VCR issued an interest-only note, bearing interest at 20%, with a maturity date of September 2012. At times, Turner held multiple notes concurrently. See Affidavit of Judith A. Wagner, attached hereto as Exhibit 2 (the 'Wagner Affidavit'), ¶ 10."

Turner's response to Wagner proposed fact 6 is:

Turner is not in possession of VCR's books and therefore is not in a position to investigate Ms. Wagner's allegation. Therefore, Mr. Turner disputes Wagner's Fact 6.

Turner's Response, doc 71, p.3. This response is totally inadequate to controvert the fact. The issue is not whether Turner has this information; the issue is whether Turner has any evidence that contradicts this statement. The Court finds that Wagner fact 6 is undisputed. See also discussion, supra, regarding Gonzales proposed fact 6.

7.   "Turner invested at least $6,170,000 in VCR's note program from early 1996 to February 2010. During the same period, Turner received payouts in excess of $4,500,000.00. VCR books and records reflect payments to Turner in the four-year period prior

Case 10-01107-s*SEALED*   Doc 85 *SEALED*   Filed 03/28/12   Entered 03/28/12 14:58:31
Page 35 of 59
Case 10-01107-j   Doc 139   Filed 11/15/12   Entered 11/15/12 10:44:09 Page 36 of 60

to the Petition Date totaling $2,586,048.76. Wagner Affidavit, ¶ 10."

Turner's response to fact 7 was the same as to fact 6, i.e., lack of knowledge. Therefore, fact 7 is undisputed.

8. "On August 20, 2010, Turner filed his Amended Proof of Claim, No. 314-2, in the amount of $5,605,000.00. See Claims Register in VCR case, No. 10-10759."

9. "On or about February 1, 2010, Turner wrote a check to VCR in the amount of $300,000. See Wagner's Cross-Claims, ¶ 10, Turner's Answer, ¶ 3."

10. "The $300,000 check was written from Turner's Bank of America account no. 160075388 ('Turner's BOA Account'), on check no. 1107. See ¶ 13, Turner's Cross-Claims, and Exhibit B, thereto."

11. "The $300,000 was deposited into VCR's operating account at Charter Bank, account no. 92017516 ('VCR's Operating Account') and commingled with all of VCR's monies. Wagner Affidavit, ¶¶ 6, 9, 10."

Turner's response to fact 11 was the same as to facts 6 and 7, i.e., lack of knowledge. Therefore, fact 11 is undisputed.

12. "VCR recorded the $300,000 check from Turner as a 'loan' in VCR's books. Wagner Affidavit, ¶ 10."

Turner's response to fact 12 was the same as to facts 6, 7 and 11, _i.e._, lack of knowledge. Therefore, fact 12 is undisputed.

13. "On or about February 3, 2010, VCR wrote Check No. 107608 to Turner for $200,000. The $200,000 check was noted in VCR's books as a 'repayment of principal.' See Wagner Affidavit, ¶ 10."

Turner's response to fact 13 was the same as to facts 6, 7, 11 and 12, _i.e._, lack of knowledge. Therefore, fact 13 is undisputed.

14. "On February 5, 2010, Check No. 107608 was negotiated, and the $200,000 was withdrawn from VCR's Operating Account. Wagner Affidavit, ¶ 10."

15. "On February 5, 2010, Check No 107608 was deposited into Turner's BOA Account. See Exhibit C to Wagner Affidavit."

16. "The $200,000 transferred from VCR to Turner on February 5, 2010 (the "Transfer") was within 90 days of the VCR Petition Date. See Exhibit 1 hereto (Certification); see also Wagner Affidavit, ¶ 10 and Exhibit B, C, and D to Wagner Affidavit."

17. "The Transfer was made while VCR was insolvent. Wagner Affidavit, ¶ 11."

18. "The Transfer was made by VCR on account of one or more antecedent debts owed to Turner (individually and collectively, the "Antecedent Debts"). Wagner Affidavit, ¶ 12."

Turner disputes fact 18. The response states:

Page -37-

Case 10-01107-j    Doc 139    Filed 11/15/12    Entered 11/15/12 10:44:09 Page 38 of 60

Disputed. Although the debtor owes Turner sums of
money, the $200,000 transfer was not related to an
antecedent debt. Mr. Vaughan has admitted that he
exchanged checks with Mr. Turner in order to procure a
check that he could send to Saul Ewing for legal fees.
See Exhibit B at 4:25-5:11, 5:22-6:1, and 6:16-23.
Despite the notation in VCR's books cited by Ms. Wagner
in her affidavit, Mr. Vaughan has contradicted that
notation, creating a question of fact. Id.

(Doc 71, p. 4). "Exhibit B" is a partial transcript of the

Douglas F. Vaughn Section 341 Meeting of Creditors on June 30,

2010. Portions of that transcript are as follows:

```
3: 16 DOUGLAS F. VAUGHN (sic)
3: 17 after having been first duly sworn under oath,
3: 18 was questioned and testified as follows:
. . .
4: 16 BY MR. BAUMAN:
4: 17 Q.  Mr. Vaugh[a]n, I represent Bob Turner.
4: 18 A.  Uh-huh.
4: 19 Q.  I want to ask you about two checks that were
4: 20 written by Mr. Turner.  The first check was for $200,000
4: 21 made out to Saul Ewing, LLC.
4: 22 A.  Yes.
4: 23 Q.  Do you recall that check?
4: 24 A.  Yes.
4: 25 Q.  Did you tell Mr. Turner to make the check out
5: 01 to Saul Ewing, LLC?
5: 02 A.  Yes, I did.
5: 03 Q.  And why did - why did you tell Mr. Turner to
5: 04 make that check out to Saul Ewing, LLC?
5: 05 A.  I had anticipated legal fees and - and that
5: 06 he - the attorney in Baltimore suggested that.
5: 07 Q.  Do you know why the attorney in Baltimore
5: 08 suggested that it be done that way?
5: 09 A.  He assumed, as did local counsel, that in the
5: 10 event we declared bankruptcy, it would be, not be clawed
5: 11 back.
5: 12 Q.  And local counsel was --
5: 13 A.  Shay Meagle.
5: 14 Q.  There was a second check also for $200,000
5: 15 that had a - that was made out to The Vaugh[a]n Company.
5: 16 In the memo section of the check, it says "Legal Fees."
5: 17 Do you recall receiving that check?
5: 18 A.  The second, no, I don't.
```

Page -38-

5: 19  Q. Do you recall asking Mr. Turner for monies for
5: 20  legal fees other than the --
5: 21  A. Oh, I do remember.
5: 22  Initially, the check for - the first check
5: 23  for $200,000 for legal fees, I sent that to Saul Ewing,
5: 24  and they told me it should be made out to Saul Ewing, so
5: 25  I sent it back and then Saul made --
6: 01  Mr. Turner made a second check out.
6: 02  Q. Did you give the first check back to
6: 03  Mr. Turner?
6: 04  A. Yes.
6: 05  Q. You didn't deposit that check?
6: 06  A. No.
6: 07  Q. If that check shows that it was deposited, do
6: 08  you know why it was deposited?
6: 09  A. I'd be probably surprised if it was, yeah.
6: 10  Q. If it was - if it was deposited, would it
6: 11  have been deposited into the Vaugh[a]n Company --
6: 12  A. Yes.
6: 13  Q. - account?
6: 14  And then what would it have been used for?
6: 15  A. Operating expenses, I suppose.
6: 16  Oh, I believe I do remember that. I believe
6: 17  at that time we gave him a check back for a hundred
6: 18  thousand at that time.
6: 19  Q. You gave Mr. Turner a check back for $100,000?
6: 20  A. I believe so, yeah.
6: 21  Q. So you received $200,000 and gave him a
6: 22  hundred back?
6: 23  A. Yes.
6: 24  Q. And did you explain to him what happened --
6: 25  A. Yes.
7: 01  Q. - to the other hundred?
7: 02  What did you explain to him?
7: 03  A. The first 100 we kept due to operating
7: 04  expenses. It was a slow time of the year.
7: 05  Q. Did you give him a promissory note or anything
7: 06  like that for --
7: 07  A. I don't remember.

The Court has reviewed Exhibit B and cannot find that anything in

the transcript that contradicts Wagner's assertion that the

$200,000 transfer was on account of an antecedent debt owed to

Turner. Even if the transcript showed that "Mr. Vaughan has

Case 10-01107-s*SEALED*   Doc 85 *SEALED*   Filed 03/28/12   Entered 03/28/12 14:58:31
Page 39 of 59

admitted that he exchanged checks with Mr. Turner in order to
procure a check that he could send to Saul Ewing for legal fees"
that transcript does not dispute Wagner's facts 9 through 16
which the Court has found undisputed. All of the transactions
boil down to a simple fact that Turner wrote a check to VCR for
$300,000 and VCR subsequently paid $200,000 to Turner in the
preference period. To the extent Vaughan's 341 testimony is at
variance, the documents are clear and his testimony does not
raise a material fact question in the Court's mind. If there
were other transactions with no net effect in the meantime, which
seems to be Mr. Turner's point, that is simply not relevant. Or,
perhaps Turner is asserting a subsequent new value defense[11] for
the $200,000 he transferred to Ewing; the problem with that,
however, is that Vaughan is not the same debtor as VCR. In
summary, the Court finds Fact 18 undisputed.

---

[11] Section 547(c)(4) gives a creditor a defense if it
advanced new value to the debtor after receiving a preferential
payment. It provides:

   The trustee may not avoid under this section a
   transfer--
   (4) to or for the benefit of a creditor, to the extent
   that, after such transfer, such creditor gave new value
   to or for the benefit of the debtor--
   (A) not secured by an otherwise unavoidable security
   interest; and
   (B) on account of which new value the debtor did not
   make an otherwise unavoidable transfer to or for the
   benefit of such creditor.

11 U.S.C. § 547(c)(4). After Turner received the payment from
VCR the only new value he gave was to <u>Vaughan</u>, by sending funds
to Vaughan's attorney on behalf of Vaughan.

Page -40-

19.   "The Transfer allowed Turner to receive more than he would have received had this bankruptcy case at all times been a case under Chapter 7 of the Bankruptcy Code, the Transfer had not been made, and Turner had received payment of the Antecedent Debt to the extent provided under the Bankruptcy Code.  Affidavit of Linda Bloom ¶ 17 (the "Bloom Affidavit"), attached hereto as Exhibit 3 and incorporated herein by this reference."

Turner disputes fact 19.  The response states:

> Disputed.  Because the transaction was a contemporaneous exchange in the same dollar amount, Mr. Turner did not actually receive any value from the debtor that he would not have received had the transfer not been made.  Mr. Vaughan indicated that the exchange occurred because Saul Ewing had advised him to procure a retainer check from Mr. Turner directly, rather than running the funds through VCR's checking account.  See Exhibit B.  As the debtor stopped making payments to the investors in the Note Program several weeks before the Transfer, the Transfer's characterization as a repayment of principal is highly suspect.  Mr. Turner would not have received the transfer if he had not been exchanging checks for the identical amount with the debtor and, therefore, would not have received more than he would have received had the transfer not been made.

(Doc 71, pp. 4-5).  The first sentence of the response does not cite to the record and therefore does not create a fact question. And the sentence actually contradicts the record.  Wagner facts 9, 10 and 11 show that Turner wrote a check on his Bank of America account payable to VCR on February 1, 2010 in the amount of $300,000 that was deposited in VCR's operating account.  Then, Wagner facts 13, 14 and 15 show that on February 3, 2010 VCR

Page -41-

wrote a check to Turner for $200,000 which was negotiated on February 5, 2010 by deposit in Turner's Bank of America account. So, in fact the exchanges were not contemporaneous and they were in fact not for the same amount.

The second sentence, discussing Mr. Ewing's wishes or instructions, is irrelevant to whether Turner received more than he would have received in a chapter 7 liquidation. The third sentence, about VCR's failure to make payments on notes has no

Case 10-01107-s"SEALED"   Doc 85 "SEALED"   Filed 03/28/12   Entered 03/28/12 14:58:31
Page 42 of 59

Case 10-01107-j    Doc 139    Filed 11/15/12    Entered 11/15/12 10:44:09 Page 43 of 60

support in the record[12] but even if it had, it is speculative and at most argument.

The statement that "Mr. Turner did not actually receive any value from the debtor that he would not have received had the transfer not been made" is puzzling on its face. If the transfer had not been made of course he would not have received the

---

[12]Turner could have cited to his "Turner's Statement of Undisputed Material Facts" in his response to Wagner's Motion for Summary Judgment, doc 71, p. 2. In her reply brief Wagner addressed the proposed facts set forth by Turner in his response and the Court agrees that all of Turner's proposed facts are disputed. First, Turner fact 1 claims that VCR stopped making payments to investors in late 2009 and early 2010 and cites "Case 10-10763, doc 184-1, ¶¶ 37-38." Doc 184-1 is an unendorsed copy of a lawsuit allegedly filed by the SEC against Vaughan, VCR and another Vaughan entity. It appears as an exhibit to a Motion to Dismiss or Convert filed by the United States Trustee. It is not a certified copy, there is no proof that the complaint was even filed or ruled upon. The complaint is simply a collection of allegations. It is totally inadmissable for the truth of the facts asserted therein.

Turner fact 2 attempts to authenticate Turner's bank records and demonstrate that the purpose of a specific check was intended to be a retainer with Ewing through an affidavit executed by Turner's attorney's legal assistant. Doc 71, exhibit A, is the affidavit of Philippa F. Schwendimann that states that as part of her duties for the law firm, she sent a request for documents to the Bank of America and that they responded by producing affidavit exhibits A and B. She does not, as part of her affidavit, state that the affidavit is based on her personal knowledge. And, it appears that it is not. All she can testify to is the fact that she sent "x" and received "y". It does not prove that "y" is true. Putting hearsay into an affidavit does not make it admissible for a summary judgment.

Similarly, fact 3 is supported by Schwendimann's affidavit and is based on hearsay.

Fact 4 is supported by a citation to Vaughan's 341 meeting testimony where he states that Ewing instructed him to do certain things. The content of what was told to Vaughan is hearsay for the truth of what Ewing asserted, and inadmissible even though it was repeated at a 341 meeting.

Page −43−

$200,000 on February 5, 2010. If a transfer is not made, by definition a recipient receives nothing. But here, there was a transfer made by VCR - the $200,000 check - which he received and deposited. In summary, the Court finds Fact 19 undisputed.

## THE MERITS OF THE MOTIONS

### A. TURNER'S MOTION FOR SUMMARY JUDGMENT

Most of Turner's proposed facts were not established as undisputed. The ones that were are as follows:

1. Douglas Vaughan ran a Ponzi scheme involving 'investors' all over the United States.

3. During the period of May 2009 through February, 2010 Mr. Vaughan borrowed funds from Mr. Turner on a monthly basis in amounts totaling $3,650,000 from Turner in a series of eleven transactions. The amount does not include two checks that were apparently intended to be for legal fees.

4. Mr. Turner paid $200,000 to Saul Ewing, LLC.

7. Saul Ewing has placed the remaining $162,699.38 into the Court Registry with permission of the Court and makes no claim to the remaining funds.

From these undisputed facts, Turner must show that there is no genuine issue of material fact that the funds on deposit with Ewing are in a constructive trust. This is not possible with the current facts.

Case 10-01107-s*SEALED*   Doc 85 *SEALED*   Filed 03/28/12   Entered 03/28/12 14:58:31
Page 44 of 59
Case 10-01107-j   Doc 139   Filed 11/15/12   Entered 11/15/12 10:44:09 Page 45 of 60

The effect of imposing a constructive trust in a bankruptcy case is to remove the trust property from the state and award it to the creditor/beneficiaries at the expense of the other creditors. "The party seeking imposition of a constructive trust bears the burden of establishing the trust requirements." Hill v. Kinzler (In re Foster), 275 F.3d 924, 926 (10th Cir. 2001)(citing In re Seneca Oil, 906 F.2d 1445, 1449 (10th Cir. 1990)). Under established Tenth Circuit law, before undertaking the determination of whether assets are subject to a constructive trust, the Court must consider whether imposition of a constructive trust would be equitable. Hill v. Kinzler, 275 F.3d at 927. To do this, the Court must weigh the claims of the other creditors before employing any equitable fictions. Id. at 928. One factor is whether other similarly situated creditors would be harmed. Id. See also Kalish v. The Landing (In re The Landing), 160 B.R. 820, 824 (Bankr. E.D. Mo. 1993):

> The practical effect of a constructive trust in a bankruptcy case is to elevate a plaintiff's claims above the claims of all other creditors because assets in a constructive trust are not part of the bankruptcy estate. See In re Kennedy & Cohen, 612 F.2d [963] at 965 [(5th Cir. 1980)]. In the matter being considered here, if such a trust were imposed, the Plaintiffs would receive value before any other creditors of the Chapter 11 estate. The Plaintiffs would also receive a return of their investment in Option I (a separate debtor) ahead of all other creditors in that separate Chapter 7 liquidation proceeding. These results would disrupt the orderly system of distribution of assets established in the Code. The congressionally mandated scheme of priorities is to be respected and enforced by the Bankruptcy Courts.

Page -45-

Even assuming that Turner would be successful in proving that Mr. Vaughan exerted undue influence over him and tricked him, through duress or otherwise, to write checks to VCR and Ewing, he would have a tort claim, maybe a contract claim, maybe a claim for breach of duty of some relationship, or maybe even some right to equitable relief. Wagner's affidavit, doc. 65-2, p. 8, estimates VCR claims, the vast majority of which are "Ponzi scheme" claims, as between $60 million and $75 million. Each of these creditors can allege they were defrauded also. On the current record, there is no valid reason to elevate Turner's claim above others similarly situated.

Therefore, the Court finds that Turner has not shown that there is no genuine issue of material fact concerning his ownership or entitlement to the funds on deposit. Turner's Motion for Summary Judgment must be denied.

## B. GONZALES' MOTION FOR SUMMARY JUDGMENT

Most of Gonzales' proposed facts were not established as undisputed. The ones that were are:

6. On or about February 3, 2010, VCR wrote a check to Turner for $200,000 in partial repayment of the funds loaned on February 1, 2010 from Turner to VCR ("Vaughan Company, Realtors"). The $200,000 check was noted in VCR's books as a 'repayment of principal.'

Page  -46-

10. Ewing and Curlett never met Turner, never spoke to Turner or communicated with Turner in any manner whatsoever.

13. Turner filed an Amended Proof of Claim in this bankruptcy case for money that Turner loaned to the Debtor in the amount of $5,905,000 (POC No. 258-2).

From these undisputed facts, Gonzales must show that there is no genuine issue of material fact that, 1) as to Turner, a) it would not be equitable for him to assert a constructive trust over the $162,000 because he is no differently situated than other creditors, and b) the funds were under such dominion and control of Vaughan that they can be ruled to be in the estate as a matter of law; and 2) as to Wagner, a) that she lacks standing to pursue her claim against Turner in this bankruptcy case, and b) the funds are not property of the VCR estate.

As to Turner, Gonzales has established that the law is that a creditor generally cannot elevate his claim over others if they are similarly situated. Consequently, on the current record Mr. Turner's motion for summary judgment is being denied. Of course, this current ruling does not preclude him from rearguing the position at trial or presenting additional evidence that would demonstrate that he is not, in fact, similarly situated. Gonzales' second argument that the funds were under Vaughan's dominion and control is simply not yet supported by the record. The record fails to show what control Vaughan had over the funds

Page -47-

and what was to become of the funds in the event Ewing did not apply them all to attorney fees. There is no evidence of either Vaughan's or Ewing's understanding regarding the funds or the circumstances under which they were deposited. And, as far as the Court can determine there is no easy answer "as a matter of law" what becomes of unapplied trust funds supplied by a third party. There is not enough to grant any relief, so the Gonzales Motion as to Turner will be denied.

As to Wagner, the Court finds that Wagner does have standing to assert a claim to the funds. This does not suggest that the Court anticipates she will prevail on her claim, but she does have sufficient standing to argue it. Wagner's claim essentially must be either that the Ewing funds are in a constructive trust for the VCR estate, or that somehow Ewing is a recipient of a transfer and should also be liable with Turner. As noted above, to prove a constructive trust she would need to establish that the equities allowed the VCR estate to prevail over the Vaughan unsecured creditors, which was not addressed in the motion by anyone, and she would have to trace the funds from VCR, through Turner, and into Ewing. The simple fact that VCR wrote a check to Turner and he subsequently wrote a check to Ewing does not satisfy the tracing requirement. Wagner has alleged that the same funds passed from VCR through to Ewing but has not established it at this point. To the extent that Gonzales is

Page -48-

arguing lack of jurisdiction, the Court finds it has jurisdiction in the Vaughan bankruptcy to adjudicate the Wagner cross-claim against Turner. See Fed.R.Civ.P. 13(g) (authorizing cross-claims against a co-party if the claim relates to any property that is the subject matter of the original action). Additionally, the Court has independent subject matter jurisdiction over both the parties and the subject matter.

As to the second theory, it seems that once Turner had dominion and control of the $200,000 he was free to do as he pleased, including investing in lottery tickets or uranium stocks[13]. Gonzales' second argument as to Wagner is essentially the same as the first. If Wagner can trace the funds, they may be VCR estate property. If she cannot, the funds are not. The Gonzales Motion as to Wagner will be denied.

## C. WAGNER'S MOTION FOR SUMMARY JUDGMENT

Wagner established that the following facts were undisputed:

1. On February 22, 2010 (the 'Petition Date'), VCR filed a voluntary petition under Chapter 11 of the Bankruptcy Code.

2. Wagner is the duly appointed Chapter 11 Trustee of the VCR's bankruptcy estate.

---

[13]See Danning v. Miller (In re Buillion Reserve of North America), 922 F.2d 544, 549 (9th Cir. 1991)("To paraphrase Judge Easterbrook, an entity does not have "dominion over the money" until it is, in essence, 'free to invest the whole [amount] in lottery tickets or uranium stocks.") (citing Bonded Fin. Servs. v. European Am. Bank, 838 F.2d 890, 895 (7th Cir. 1988)).

Case 10-01107-s*SEALED* Doc 85 *SEALED* Filed 03/28/12 Entered 03/28/12 14:58:31 Page 49 of 59

Case 10-01107-j Doc 139 Filed 11/15/12 Entered 11/15/12 10:44:09 Page 50 of 60

3.   Turner is an individual residing and doing business in Bernalillo County, New Mexico.

4.   The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334

5.   Venue is proper in this Court.

6.   According to the books and records of VCR, Turner regularly began investing in VCR's promissory note program as early as 1996, periodically investing in increments ranging from $60,000 to $500,000, usually at a rate of 22%. Turner's notes generally amortized over a period of 24 months. Turner also invested $1,000,000 in September 2009; and VCR issued an interest-only note for the $1,000,000, bearing interest at 20%, with a maturity date of September 2012. At times, Turner held multiple notes concurrently.

7.   Turner invested at least $6,170,000 in VCR's note program from early 1996 to February 2010. During the same period, Turner received payouts in excess of $4,300,000.00. VCR books and records reflect payments to Turner in the four-year period prior to the Petition Date totaling $2,586,048.76.

8.   On August 20, 2010, Turner filed his Amended Proof of Claim, No. 314-2, in the amount of $5,605,000.00.

9.   On or about February 1, 2010, Turner wrote a check to VCR in the amount of $300,000.

Page -50-

10. The $300,000 check was written from Turner's Bank of America account no. 160075388 ('Turner's BOA Account'), by check no. 1107.

11. The $300,000 was deposited into VCR's operating account at Charter Bank, account no. 92017516 ('VCR's Operating Account') and commingled with all of VCR's monies.

12. VCR recorded the $300,000 check from Turner as a 'loan' in VCR's books.

13. On or about February 3, 2010, VCR wrote Check No. 107608 to Turner for $200,000. The $200,000 check was noted in VCR's books as a 'repayment of principal.'

15. On February 5, 2010, Check No 107608 was deposited into Turner's BOA Account.

16. The $200,000 transferred from VCR to Turner on February 5, 2010 (the "Transfer") was within 90 days of the VCR Petition Date.

17. The Transfer was made while VCR was insolvent.

18. The Transfer was made by VCR on account of one or more antecedent debts owed to Turner (individually and collectively, the "Antecedent Debts").

19. The Transfer allowed Turner to receive more than he would have received had this bankruptcy case at all times been a case under Chapter 7 of the Bankruptcy Code, the Transfer had not been

Case 10-01107-s"SEALED" Doc 85 *SEALED* Filed 03/28/12 Entered 03/28/12 14:58:31 Page 51 of 59

Case 10-01107-j Doc 139 Filed 11/15/12 Entered 11/15/12 10:44:09 Page 52 of 60

made, and Turner had received payment of the Antecedent Debt to the extent provided under the Bankruptcy Code.

In this adversary proceeding Wagner seeks to avoid a preferential transfer under Bankruptcy Code section 547. The United States Supreme Court discussed the policies underlying that section in Union Bank v. Wolas (In re ZZZZ Best Co., Inc.), 502 U.S. 151 (1991).

> The Bank and the trustee agree that § 547 is intended to serve two basic policies that are fairly described in the House Committee Report. The Committee explained:
>> "A preference is a transfer that enables a creditor to receive payment of a greater percentage of his claim against the debtor than he would have received if the transfer had not been made and he had participated in the distribution of the assets of the bankrupt estate. The purpose of the preference section is two-fold. First, by permitting the trustee to avoid prebankruptcy transfers that occur within a short period before bankruptcy, creditors are discouraged from racing to the courthouse to dismember the debtor during his slide into bankruptcy. The protection thus afforded the debtor often enables him to work his way out of a difficult financial situation through cooperation with all of his creditors. Second, and more important, the preference provisions facilitate the prime bankruptcy policy of equality of distribution among creditors of the debtor. Any creditor that received a greater payment than others of his class is required to disgorge so that all may share equally. The operation of the preference section to deter 'the race of diligence' of creditors to dismember the debtor before bankruptcy furthers the second goal of the preference section-that of equality of distribution." [H.R. Rep. No. 95-595], at 177-178 [(1977)], U.S. Code Cong. & Admin. News 1978, pp. 6137, 6138.

Id. at 160-61.

Case 10-01107-s°SEALED° Doc 85 "SEALED" Filed 03/28/12 Entered 03/28/12 14:58:31
Page 52 of 59

Case 10-01107-j Doc 139 Filed 11/15/12 Entered 11/15/12 10:44:09 Page 53 of 60

Before addressing the merits of Wagner's preference claim, the Court will examine Turner's affirmative defenses to determine if any of them preclude proof of any required element[14].



---

[14] But, even before addressing the individual affirmative defenses, the Court wants to clarify a misunderstanding that pervades preference cases. In many cases, courts state that there are no defenses to a preference action except those specifically listed in sub-section (c). See, e.g. Gonzales v. Food Marketing Group (In re Furr's Supermarkets, Inc.), 320 B.R. 1, 6 (Bankr. D. N.M. 2004) ("[Section] 547(c) is the exclusive list of defenses available to preferential transfers.") This statement does not mean that a defendant cannot challenge the elements that a trustee must prove to establish a preference. See 11 U.S.C. § 547(b). In other words, a defendant is free to allege and attempt to prove that the transfer was not made with debtor's property, that it was not a creditor, that there was no antecedent debt, that the payment was outside of the preference period, that the debtor was solvent, or that receipt of the payment did not improve its position. See, e.g. Sloan v. Zions First Nat'l Bank (In re Castletons, Inc.), 990 F.2d 551, 555 (10th Cir. 1993) (Trustee's avoidance claim rejected because "she did not satisfy her burden of proof under § 547(b)(5)".) Rather, the statement necessarily means that, once the elements of section 547(b) are proved and the preference established, the only remaining defenses to the trustee's recovery of that preference are those set forth in section 547(c). Rushton v. E & S Inter. Enter., Inc. (In re Eleva, Inc.), 235 B.R. 486, 488 (10th Cir. BAP 1999)("Once a trustee has established that a transfer is a preference, a creditor may assert a defense as provided in 11 U.S.C. § 547(c).")

Case 10-01107-s*SEALED*   Doc 85 "SEALED*   Filed 03/28/12   Entered 03/28/12 14:58:31
Page 53 of 59

Case 10-01107-j   Doc 139   Filed 11/15/12   Entered 11/15/12 10:44:09 Page 54 of 60

dealing with the Wagner cross-claim. The defense of failure to state a claim will be dealt with below.

As to "the funds are not property of the estate", we are dealing with a claim that a payment by VCR to Turner before VCR's bankruptcy was a preference. It is undisputed that Turner wrote a check to VCR for $300,000. There were no restrictions imposed on that $300,000 and VCR was free to do with it as it chose. The Tenth Circuit follows the "dominion and control" test. Bailey v. Big Sky Motors, Ltd. (In re Ogden), 314 F.3d 1190, 1202 (10th Cir, 2002). "Dominion" over money is the right to put the money to one's own purpose. Id. (Citation omitted). There is really no argument that the $300,000 did not become property of VCR. It was deposited in its general account and co-mingled. Several days later VCR wrote a check to Turner for $200,000. He deposited it.

> The Bankruptcy Code does not define "property of the debtor." Because the purpose of the avoidance provision is to preserve the property includable within the bankruptcy estate-the property available for distribution to creditors-"property of the debtor" subject to the preferential transfer provision is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings.

Begier v. Internal Revenue Service, 496 U.S. 53, 58 (1990). If VCR had not written the check for $200,000 to Turner it would have been part of the estate. The payment was from property of the debtor. To the extent Turner may be arguing that VCR never

Page -54-

had an interest in the $300,000, that argument is also not well taken. Under Ogden, a debtor obtains rights even if the property is obtained by fraud, Ogden, 314 F.3d at 1198, or borrowed. Id. at 1199. And, a repayment of a fraudulent debt to the victim is made with the debtor's funds and can be a preference. Id. at 1201 n.7.

As to "the estate lacks title [to the $162,000]", this affirmative defense is more properly directed to the Gonzales claim. It is meaningless in this context.

As to "the transfer was in good faith without knowledge of the bankruptcy", it is unclear which "transfer" Turner refers. First, there was his transfer of $300,000 to VCR. Second, VCR transferred $200,000 back to Turner. Finally, and irrelevant to Wagner's claim for a preference, Turner transferred $200,000 to Ewing or to Ewing as agent for Vaughan. The lack of clarity is irrelevant, however, because all three transfers were before there was a bankruptcy about which knowledge could be had. Furthermore, the good faith of a preference recipient is totally irrelevant.

> "[A] creditor's state of mind has nothing whatsoever to do with the policy of equality of distribution, and whether or not he knows of the debtor's insolvency does little to comfort creditors similarly situated who will receive that much less from the debtor's estate as a result of the prebankruptcy transfer to the preferred creditor." H.R.Rep. No. 595, 95th Cong., 1st Sess. 178 (1977), 1978 U.S.C.C.A.N. 5787, 5963, 6139.

Page -55-

Clark v. Balcor Real Estate Finance, Inc. (In re Meridith Hoffman Partners), 12 F.3d 1549, 1557 (10th Cir.), cert. denied, 512 U.S. 1206 (1994). See also Meoli v. Huntington Nat'l Bank (In re Teleservices Group, Inc.), 444 B.R. 767, 807 (Bankr. W.D. Mich. 2011):

> [N]o moral agenda drives the rationale for recovering a preference. Rather, the requirements for recovery simply reflect whatever else Congress intended to accomplish through Section 547's enactment.
> It should come as no surprise, then, that the Section 547(c) defenses give scant attention to the recipient's good faith. After all, the underlying purpose of a preferential recovery is to ensure a more equitable distribution. Consequently, preference law is indifferent to whether the recipient of the preference was aware or not of the inequity created when the preference was made.

(Footnote omitted.) And see Ogden, 314 F.3d at 1201 (It is generally the effect of the transaction, rather than the debtor or creditor's intent, that is controlling.); Gill v. Winn (In re Perma Pacific Properties), 983 F.2d 964, 968 (1992)(Neither the debtor's nor the creditor's intent or state of mind is dispositive of whether or not a transfer is a preference.) (Citation omitted.)



In his reply brief, Turner for the first time claims that the payment he received was not on account of an antecedent debt and also that the exchange was contemporaneous. Neither argument is valid. First, while his proofs of claim shows that he was an antecedent "creditor," as does his Material Fact 3, he argues that the $200,000 he cashed on February 5, 2010 was not "on account" of those debts. He does not suggest, however, what the $200,000 was "on account of" if not a debt; surely he is not claiming that VCR gifted him $200,000. He only argues that it was a contemporaneous exchange. What was contemporaneous, however, was his receipt from VCR of $200,000 and his payment the same day of $200,000 to Ewing as agent for Vaughan. This is not contemporaneous because there are different entities. These defenses are not well taken.

Finally, the final issue is whether Wagner has stated a claim.

> To establish a voidable preference the Trustee must prove all five elements of § 547(b). They are: any transfer of property of the debtor—
> (1) to or for the benefit of a creditor;
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made—
> (A) on or within 90 days before the date of the filing of the petition;...
> (5) that enables such creditor to receive more than such creditor would receive if—

Case 10-01107-s*SEALED*  Doc 85 *SEALED*  Filed 03/28/12  Entered 03/28/12 14:58:31  Page 57 of 59

(A) the case were a case under Chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the
extent provided by the provisions of this title.

Eckles v. Pan American Marketing (In re Balducci Oil Co.), 33
B.R. 843, 845 (Bankr. D. Colo. 1983). There are actually six
elements, the five numbered elements plus proof that the transfer
was of property of the estate. Wagner has established all
elements:

| Element | Proof |
|---|---|
| Property of the debtor. | Wagner fact 13 - the funds came from VCR's checking account. |
| 1) to or for the benefit of Turner. | Wagner facts 13-15. |
| 2) on account of antecedent debt. | Wagner fact 18; Turner fact 3; Turner's two proofs of claim; discussion on page 54. |
| 3) made when debtor was insolvent. | Wagner fact 17. |
| 4) made within 90 days of filing. | Wagner fact 16. |
| 5) enables Turner to receive more than in liquidation ("Chapter 7 test"). | Turner fact 19. |

Therefore, Wagner is entitled to a judgment on her cross-
claim against Turner, and a separate judgment will enter awarding
her $200,000 plus pre-judgment interest from the filing of the
cross-claim and post-judgment interest from the date of entry of
the judgment.

CONCLUSION

For the reasons set forth above, the Court finds that Turner's Motion for Summary Judgment against both Wagner and Gonzales (doc 41) is not well taken and will be denied. The Court also finds that Gonzales' Motion for Summary Judgment against both Turner and Wagner (doc 47) is not well taken and will be denied. The Court also finds that Wagner's Motion for Summary Judgment against Turner is well taken and a Judgment in conformity with this Opinion will be entered separately.

Honorable James S. Starzynski
United States Bankruptcy Judge

Date Entered on Docket: March 28, 2012

Copies to:

George M Moore
Attorney for Gonzales
Moore, Berkson & Gandarilla, P.C.
PO Box 7459
Albuquerque, NM 87194

Christopher P. Bauman
Attorney for Turner
Bauman, Dow & Leon, PC
PO Box 30684
Albuquerque, NM 87190-0684

Edward Alexander Mazel
Attorney for Wagner
Arland & Associates, LLC
201 3rd ST NW, STE 505
Albuquerque, NM 87102-3331

Case 10-01107-s*SEALED* Doc 85 *SEALED* Filed 03/28/12 Entered 03/28/12 14:58:31 Page 59 of 59

Case 10-01107-j Doc 139 Filed 11/15/12 Entered 11/15/12 10:44:09 Page 60 of 60